UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Archdiocese of Saint Paul and Minneapolis, | Court File No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| The Continental Insurance Company, as successor to The Fidelity and Casualty Company of New York, Fireman's Fund Insurance Company, as successor to Fireman's Fund Indemnity Company, National Fire Insurance Company of Hartford, TIG Insurance Company, as successor to International Insurance Company, Continental Casualty Company, Hartford Accident and Indemnity Company, American Home Assurance Company, The Aetna Casualty and Surety Company, n/k/a Travelers Casualty and Surety Company, Certain Underwriters at Lloyd's, London subscribing to Policies SL3721, SL3722, SL3723, ISL3115, ISL3116, ISL3117, ISL3675, ISL3613, ISL3614, and ISL3615, Bellefonte Insurance Company, Excess Insurance Company a/k/a Excess Insurance Company Limited, Terra Nova Insurance Company Limited, Dominion Insurance Company, Soverign Marine & General Insurance Company Limited a/k/a Sovereign Marine & General Insurance Company Limited, Stronghold Insurance Company Limited, Yasuda Fire & Marine Insurance Company (U.K.) Limited, Sphere Drake Insurance PLC, CNA Reinsurance of London, Limited, Interstate Fire and Casualty Company, 21st Century Centennial Insurance Company f/k/a Colonial Penn Insurance Company, | |
| Defendants. | |

Plaintiff the Archdiocese of Saint Paul and Minneapolis ("Archdiocese"), for its Complaint for Declaratory Relief against Defendants The Continental Insurance Company, as successor to The Fidelity and Casualty Company of New York, Fireman's Fund Insurance Company, as successor to Fireman's Fund Indemnity Company, National Fire Insurance Company of Hartford, TIG Insurance Company, as successor to International Insurance Company, Continental Casualty Company, Hartford Accident and Indemnity Company, American Home Assurance Company, The Aetna Casualty and Surety Company, n/k/a Travelers Casualty and Surety Company, Certain Underwriters at Lloyd's, London subscribing to Policies SL3721, SL3722, SL3723, ISL3115, ISL3116, ISL3117, ISL3675, ISL3613, ISL3614, and ISL3615, Bellefonte Insurance Company, Excess Insurance Company a/k/a Excess Insurance Company Limited, Terra Nova Insurance Company Limited, Dominion Insurance Company, Soverign Marine & General Insurance Company Limited a/k/a Sovereign Marine & General Insurance Company Limited, Stronghold Insurance Company Limited, Yasuda Fire & Marine Insurance Company (U.K.) Limited, Sphere Drake Insurance PLC, CNA Reinsurance of London, Limited, Interstate Fire and Casualty Company, and 21st Century Centennial Insurance Company, f/k/a Colonial Penn Insurance Company (collectively referred to as "Carriers"), states and alleges as follows:

## **BACKGROUND**

1.      The Archdiocese encompasses 12 Twin Cities metro-area counties in Minnesota, including Ramsey, Hennepin, Anoka, Carver, Chisago, Dakota, Goodhue, Le

Sueur, Rice, Scott, Washington, and Wright counties (the "Region").  Approximately 825,000 parishioners and 187 parishes are within the Archdiocese's bounds.  The Archdiocese is the embodiment of the Roman Catholic Church ("Church") in the region, and its purpose is to promote spiritual, educational, and other interests of the Church, including charitable, benevolent, eleemosynary, and missionary work.

2.     Effective May 25, 2013, the Minnesota Legislature enacted the Minnesota Child Victims Act, Minn. Stat. § 541.073, which allows individuals with certain previously time-barred claims alleging abuse, as defined in Minn. Stat. §§ 609.342 to 609.3451, to now file claims which will be considered timely as long as those claims are filed by May 25, 2016.

3.     Since enactment of the Child Victims Act, the Archdiocese has been named as a defendant in over 20 lawsuits, and has received numerous additional Notices of Claim, alleging that the Archdiocese was negligent in not preventing such abuse by clergy while associated with the Archdiocese (collectively the "Clergy Abuse Claims").  Moreover, the Archdiocese continues to receive new claims on a regular basis.  Individuals asserting Clergy Abuse Claims are referred to herein as "Clergy Abuse Claimants."

4.     The Archdiocese has been working with plaintiffs' counsel to address and resolve the issues relating to the Clergy Abuse Claims.  It has implemented new child protection protocols and created new positions designed to implement and ensure compliance with the child protection protocols.  It is also committed to achieving a global

resolution of the financial aspects of the Clergy Abuse Claims. A key source of funds for any such resolution, among others, is the Archdiocese's insurance coverage.

5.     The Archdiocese purchased substantial amounts of insurance to cover the type of injuries for which the Clergy Abuse Claimants seek recovery. The Archdiocese has tendered each Clergy Abuse Claim to each Carrier providing coverage for a policy period implicated by such Clergy Abuse Claim. Each of the Carriers have reserved their rights and, in some cases denied coverage, on various grounds. As part of its effort to achieve a global financial resolution of the Clergy Abuse Claims, the Archdiocese has been seeking contributions from the Carriers. To date, the Carriers have not agreed to contribute towards a global resolution. To further a global resolution, the Archdiocese seeks declarations regarding the specific rights of the Archdiocese and the obligations of each Carrier as to their obligations with respect to Clergy Abuse Claims.

## THE PARTIES

6.     The Archdiocese's principal place of business is in Saint Paul, Minnesota and is organized as a Minnesota church corporation under Minn. Stat. § 315.16. The secular embodiment of the Archdiocese is sometimes referred to as the Chancery Corporation. The Archdiocese is formerly known as the Diocese of Saint Paul and the Diocese of Saint Paul and Minneapolis. This complaint is filed only on behalf of the Archdiocese and not any parishes.

7.     The Continental Insurance Company, successor to The Fidelity and Casualty Company of New York, is a subsidiary of CNA Financial Corporation

("CNA").  For simplicity's sake, this entity is referred to as "F&C."  F&C is a Pennsylvania corporation with its principal place of business in Chicago, Illinois.

8.      Fireman's Fund Insurance Company, successor to Fireman's Fund Indemnity Company ("FFIC") is a California company with its principal place of business in Novato, California.

9.      National Fire Insurance Company of Hartford ("NFIC") is an Illinois company with its principal place of business in Chicago, Illinois.  NFIC is a subsidiary of CNA.

10.     TIG Insurance Company, successor to International Insurance Company ("International"), is a California company with its principal place of business in Manchester, New Hampshire.

11.     Continental Casualty Company ("Continental") is an Illinois company with its principal place of business in Chicago, Illinois.  Continental is a subsidiary of CNA.

12.     Hartford Accident and Indemnity Company ("Hartford") is a Connecticut company with its principal place of business in Hartford, Connecticut.

13.     American Home Assurance Company ("American Home") is a New York company with its principal place of business in New York, New York.

14.     The Aetna Casualty and Surety Company, n/k/a Travelers Casualty and Surety Company is a Connecticut company with its principal place of business in Hartford, Connecticut.  To correspond with the policies, this entity is referred to as "Aetna."

15.    The Archdiocese was issued insurance policies, numbered SL3721, SL3722, SL3723, ISL3115, ISL3116, ISL3117, ISL3675, ISL3613, ISL3614, and ISL3615, underwritten by certain underwriters at Lloyd's, London (collectively, the "Lloyd's Policies").    The underwriters of the Lloyd's Policies are syndicates (the "Syndicates") consisting of privately owned companies or people, known as "Names," and the Syndicates act through "Managing Agents."    Upon information and belief, the Syndicates, Names, and Managing Agents of each of the Lloyd's Policies identified in the caption are all citizens of, and have a principal place of business in, the United Kingdom or other jurisdictions outside the United States.    Upon information and belief, none of the Syndicates, Names, or Managing Agents are citizens of Minnesota.

16.    Upon information and belief, Bellefonte Insurance Company ("Bellefonte"), Excess Insurance Company a/k/a Excess Insurance Company Limited ("Excess"), Terra Nova Insurance Company ("Terra Nova"), Dominion Insurance Company ("Dominion"), Soverign Marine & General Insurance Company Limited a/k/a Sovereign Marine & General Insurance Company Limited ("Sovereign"), Stronghold Insurance Company Limited ("Stronghold"), Yasuda Fire & Marine Insurance Company (U.K.) Limited ("Yasuda"), Sphere Drake Insurance PLC ("Sphere Drake"), and CNA Reinsurance of London, limited ("CNA London") are all insurers who are citizens of, and have a principal place of business in, the United Kingdom or other jurisdictions outside the United States.    Bellefonte, Excess, Terra Nova, Dominion, Sovereign, Stronghold, Yasuda, Sphere Drake, and CNA London are not citizens of Minnesota.    The Syndicates, Names, and Managing Agents of the Lloyd's Policies, and Bellefonte, Excess, Terra

Nova, Dominion, Sovereign, Stronghold, Yasuda, Sphere Drake, and CNA London, are all collectively referred to herein as the "London Market Insurers."

17.     Interstate Fire and Casualty Company ("Interstate") is an Illinois company with its principal place of business in Chicago, Illinois.

18.     21st Century Centennial Insurance Company f/k/a Colonial Penn Insurance Company ("Colonial Penn") is a Pennsylvania company with its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

19.     This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

20.     The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states or foreign jurisdictions and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

21.     In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the claims against each Carrier are so related to the claims in this action that they form part of the same case or controversy.

22.     This Court has personal jurisdiction over each Carrier because each Carrier has sufficient contacts with the state of Minnesota.  Further, each has otherwise availed itself of the markets of Minnesota including the issuance to the Archdiocese of the policies at issue in this matter.

23.    In addition, Aetna, American Home, F&C, Continental, Hartford, International, NFIC, and Colonial Penn are authorized to do business in Minnesota including being licensed as property and casualty insurers.

24.    Further, this Court has personal jurisdiction over the London Market Insurers because they agree in their policies to submit to jurisdiction in Minnesota.

25.    Venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the dispute occurred in this District including the issuance of the respective Policies at issue to the Archdiocese, the Archdiocese's payment of premiums under the Policies for its share of the coverage, the Archdiocese's assertion of its rights to coverage under the Policies, and each carrier's refusal to accede to the Archdiocese's assertion of its rights in certain respects.

## FACTS

### F&C

26.    F&C issued various primary policies of insurance to the Archdiocese, including Policy No. XP74084, for the policy period ending August 1, 1952, and Policy No. XP128258 for the period August 1, 1952 – August 1, 1955 (the "F&C Policies"). Policy No. XP128258 provides bodily injury limits of $100,000 per person, with no aggregate limits.  Upon information and belief, Policy No. XP74084, which preceded Policy No. XP128258, was also a three-year policy providing bodily injury limits of $100,000 per person per year, with no aggregate.  Both F&C Policies are "duty to defend" policies.

**FFIC**

27.     FFIC issued various primary policies of insurance to the Archdiocese, including Policy No. GAC312672 for the period August 1, 1955 – August 1, 1958 and Policy No. CL331931 for the period August 1, 1958 – August 1, 1961 (together the "FFIC Policies").  In the FFIC Policies, FFIC agrees "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person."  FFIC also agrees to "defend any suit against the insured alleging such injury, sickness, disease or destruction  and seeking damages on account thereof, even if such suit is groundless, false or fraudulent … ."  The FFIC Policies provide limits of $100,000 per person per year, with no aggregate limits.  The FFIC Policies apply "to accidents which occur during the policy period within the United States of America."

**NFIC**

28.     NFIC issued primary insurance coverage to the Archdiocese for the period August 16, 1963 – August 16, 1966, including Policy No. HO4527587 (the "NFIC Policy").  NFIC agreed "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury … and the Company shall defend any suit against the Insured alleging such bodily injury … and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent … ."  "Bodily injury" is defined as "bodily injury, sickness or disease, including death resulting therefrom, sustained by

any person." The NFIC Policy provides limits of $500,000 per occurrence with no aggregate limit.

### **International**

29. International issued primary insurance coverage to the Archdiocese, including Policy No. GA114938, for the period August 1, 1967 – August 1, 1970 (the "International Policy"). International agreed to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay because of … bodily injury … to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury… ."

30. The International Policy provides limits of $100,000 per person per year, with no aggregate limits applicable with respect to the Clergy Abuse Claims.

### **Continental**

31. Continental issued various policies of insurance to the Archdiocese, including Policy No. RDU9799786 for the period August 17, 1966 – August 17, 1969 (the "Continental Policy"), which sits above the underlying policies in place from August 1966 to August 1969. The Continental Policy provides $3 million in umbrella coverage for each occurrence, with no applicable aggregate limit.

32. The declaration page for the Continental Policy is form number P1-40102-A. Upon information and belief, the Continental Policy includes Insuring Agreement form number P1-40103-A.

33.    Under policy form 40103-A, Continental agreed "[t]o indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of liability, (a) imposed upon the Insured by law, … for damages, direct or consequential, and expenses, all as defined by the term "ultimate net loss" on account of,  Personal Injuries … caused by or arising out of each occurrence."  "Personal Injuries" are defined as "Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, … Humiliation, Invasion of right of privacy… ."  "Ultimate Net Loss" is "the total sum which the Insured or any company as his insurer becomes obligated to pay by reason of Personal Injury … either through adjudication or compromise, and all sums paid for expense including … in respect to litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder … ."

34.    Given the limits of the underlying policies, the Continental Policy is expected to be implicated in resolving Clergy Abuse Claims that implicate Continental's policy years.

**Hartford**

35.    Hartford issued primary insurance coverage to the Archdiocese, including Policy No. 41C549216 for the period August 1, 1970 – August 1, 1973 (the "Hartford Policy").  The Hartford Policy provides limits of $100,000 per person, with no aggregate limits.  Hartford agrees to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … bodily injury … to which this insurance applies, caused by an occurrence, and the company shall have the right and

duty to defend any suit against the insured seeking damages on account of such bodily injury … even if any of the allegations of the suit are groundless, false or fraudulent…"

**American Home**

36.     American Home issued various policies of insurance to the Archdiocese, including Umbrella Policy No. CE2598055 for the period August 17, 1969 – August 17, 1972 and Umbrella Policy No. BE3374208 for the period August 17, 1972 – August 17, 1975 (together the "American Home Policies") which sit above certain primary policies from August 1969 to August 1975.  American Home agrees "[t]o pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter defined, which the insured shall become legally obligated to pay as damages by reason of the liability imposed upon the insured by law… because of …Personal Injury … as defined herein and caused by or arising out of an occurrence."  "Personal Injury" is defined in pertinent part as "bodily injury, sickness, disease, disability, shock, fright, mental anguish and mental injury ... ."  Personal Injury also includes "assault or battery not committed by or at the direction of the insured … ."

37.     Policy No. CE2598055 provides $3 million in umbrella coverage for each occurrence with no aggregate limit applicable to the Clergy Abuse Claims.

38.     Pursuant to Endorsement 7, Policy No. BE 3374208, the policy provides $5 million in coverage per occurrence per year with no aggregate limit applicable to the Clergy Abuse Claims.

39.    Given the limits of the underlying policies, the American Home Policies are expected to be implicated in resolving Clergy Abuse Claims that implicate American Home's policy years.

**Aetna**

40.    Aetna issued various policies of insurance to the Archdiocese, including primary policies consisting of Policy Nos. 37AL188420 for the period August 1, 1973 – August 1, 1974, 37SM802875FCA for the period August 1, 1974 – August 1, 1977, 37SM802875FCA7 for the period August 1, 1977 – August 1, 1978, 37SM10285FCA for the period August 1, 1978 – August 1, 1979, and 37SM15868FCA for the period August 1, 1979 – July 1, 1980 (collectively the "Aetna Primary Policies"), and umbrella policies consisting of Policy Nos. 37XS1768WCA for the period August 17, 1975 – August 17, 1976, 37XS2046WCA for the period August 17, 1976 – August 17, 1977, 37XS2401WCA for the period August 17, 1977 – August 17, 1978, 37XS2831WCA, upon information and belief, for the period August 17, 1978 – July 1, 1979, and 37XS3399WCA for the period July 1, 1979 – July 1, 1980 (collectively the "Aetna Umbrella Policies") (the Aetna Primary Policies and the Aetna Umbrella Policies together the "Aetna Policies").

41.    In the Aetna Primary Policies, Aetna agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend … even if any of the allegations of the suit are groundless, false or fraudulent … ."  In the Aetna Umbrella

Policies, Aetna agreed to "indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of ... Personal Injury ... ." "'[P]ersonal injury' means bodily injury, shock, mental anguish, sickness or disease, including death at any time resulting therefrom ... ."

42.     Each Aetna Primary Policy provides $500,000 in limits per occurrence per year, except for Policy No. 37AL188420, which provides $300,000 per occurrence, with no applicable aggregate limit.   Aetna Umbrella Policy Nos. 37XS1768WCA and 37XS2046WCA each provide $5 million in limits per occurrence per year.   Aetna Umbrella Policy Nos. 37XS2401WCA and 37XS3399WCA each provide $3 million in limits per occurrence per year with no applicable aggregate limits.  Upon information and belief, Aetna Umbrella Policy No. 37XS2831 also provides $3 million in limits per occurrence per year with no applicable aggregate limit.

43.     Given the limits of the underlying policies, the Aetna Umbrella Policies are expected to be implicated in resolving Clergy Abuse Claims that implicate Aetna's policy years.

**London Market Insurers**

44.     For the period September 1, 1980 – September 1, 1983, the first layer of coverage was provided in part by Certain Underwriters at Lloyd's, London subscribing to Policy No. SL3721 and in part by Bellefonte, Excess, and Terra Nova under Policy No. SLC5742.  For this period, excess coverage was provided by Certain Underwriters at Lloyd's, London subscribing to Policy No. SL3722, and additional excess coverage was

provided in part by Certain Underwriters at Lloyd's, London subscribing to Policy No. SL3723 and in part by Dominion, Sovereign, and Stronghold under Policy No. SLC5744.

45.     For the period September 1, 1983 – September 1, 1986, the first layer of coverage was provided in part by Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3115 and in part by Excess, Terra Nova, Yasuda, and Sphere Drake under Policy No. ICO4074.   For this period, excess coverage was provided by Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3116, Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3117, and Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3675.

46.     For the period September 1, 1986 – September 1, 1987, the first layer of coverage was provided in part by Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3613 and in part by CNA London under Policy No. ICO5387.   For the same period, excess coverage was provided by Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3614 and Certain Underwriters at Lloyd's, London subscribing to Policy No. ISL3615.

47.     The policies comprising the first layer of coverage of London Market Insurers provide that the Insurers "agree …, to indemnify the assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured …, for damages direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', on account of personal injuries … arising out of any occurrence …"  In those policies, Personal Injuries means "Bodily Injury, Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, …, Humiliation, Invasion of Right of

Privacy … ."  The policies comprising the first layer of coverage of the London Market Insurers provide coverage after applicable retentions are satisfied by the Archdiocese.

48.     In addition, the first layer of coverage provided by the London Market Insurers contain additional coverage reimbursing the Archdiocese for retention amount paid by the Archdiocese in excess of the Archdiocese's loss fund.

**Interstate**

49.     Interstate issued various policies of insurance to the Archdiocese, including Policy No. 183152670 for the period September 1, 1980 – September 1, 1984 and Policy No. 830170075 for the period September 1, 1984 – September 1, 1985 (the "Interstate Policies"), which sit over the corresponding Lloyd's Primary Policies and provide coverage in the amount of the difference between underlying including self-insured retention and $5 million per occurrence, and Policy No. 830172570, which provides coverage in the amount of the difference between underlying including self-insured retention and $1 million of coverage per occurrence.

50.     Given the limits of the underlying policies, the Interstate Policies are expected to be implicated in resolving Clergy Abuse Claims that implicate Interstate's policy years.

**Colonial Penn**

51.     Colonial Penn issued insurance to the Archdiocese, including Policy No. XL150030 for the period September 1, 1985 – September 1, 1986 (the "Colonial Penn Policy") that sits above certain Bishop's Plan policies.  Upon information and belief, the

Colonial Penn Policy provides coverage for the type of injury alleged by the Clergy Abuse Claimants.

52.     The Colonial Penn Policy provides $4 million in coverage excess of $1 million for each occurrence with no aggregate limit applicable to the Clergy Abuse Claims.

53.     Given the limits of the underlying policies, the Colonial Penn Policy is expected to be implicated in resolving the Clergy Abuse Claims that implicate Colonial Penn's policy years.

**The Disputes**

54.     The policies issued by each Carrier and referred to above are collectively referred to as the "Policies."  All conditions precedent have been met with respect to each of the Policies.

55.     The Archdiocese has tendered to the Carriers the Clergy Abuse Claims that implicate each Carriers' respective policy periods.  Each Carrier has reserved its rights to deny coverage for the Clergy Abuse Claims on multiple grounds as more specifically delineated in their respective reservation of rights letters.  Grounds for denials include, but are not limited to, that there is no accident or occurrence because the injury was expected or intended or not fortuitous; and that there is no bodily injury.  In addition, disputes exist with several Carriers concerning the policy attachment points and the limits of liability of the Policies as they apply to the Clergy Abuse Claims, the "trigger" method applicable to the Clergy Abuse Claims, and the method of allocation of liability for the Clergy Abuse Claims where more than one policy or policy year is triggered in a Clergy

Abuse Claim. In addition, several Carriers denied coverage on the ground that policies do not exist and that the Notices of Claim do not constitute "suits."

### **COUNT ONE – DECLARATORY JUDGMENT (All Defendants)**

56. The Archdiocese realleges and incorporates paragraph 1 through 55 as if fully set forth herein.

57. The Carriers have refused to confirm that they will provide indemnity and defense in connection with the Clergy Abuse Claims.

58. Based upon the Carriers' reservation of rights letters, the bases for refusing to defend and indemnify the Archdiocese include that the Clergy Abuse Claims do not seek damages because of bodily injury, and that the Clergy Abuse Claims are not "accidents" or "occurrences" as those terms are used in each of the Carriers' policies because the harm was expected or intended.

59. An actual controversy of a justiciable nature currently exists between the Archdiocese and its Carriers concerning the Carriers' obligations under the Policies.

60. Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

      a)      With respect to each Clergy Abuse Claim that triggers a Carrier's policy period, that as to such Clergy Abuse Claim and such Policy,

            i)      The injuries described in each Clergy Abuse Claim constitute bodily or personal injury, and the damages sought in each Clergy Abuse Claim are because of bodily or personal injury.

ii)   The bodily injury/personal injury alleged in each Clergy Abuse Claim was caused by "accident" or "occurrence" as those terms are used in each of the Carriers' Policies.

iii)  No exclusions apply to limit coverage for the Clergy Abuse Claims.

iv)   The appropriate trigger of coverage for the Clergy Abuse Claims.

v)    The method of allocation of liability the Archdiocese may have, if any, in connection with the Clergy Abuse Claims among triggered policy years.

vi)   Each Carrier has, or will have upon satisfaction of any retained limit, a duty to indemnify the Archdiocese for damages paid in the form of verdicts, judgments or settlements, and defense costs incurred in connection with the Clergy Abuse Claims.

vii)  Each primary Carrier has a duty to defend and indemnify the Archdiocese in connection with the Clergy Abuse Claims.

b)   Each Carrier shares responsibility for (i) fees incurred to achieve a global settlement with plaintiffs' attorney Jeff Anderson's clients; and (ii) legal fees and expenses incurred by the Archdiocese in responding to the Carriers' request for documentation relating to the Clergy Abuse Claims.

## COUNT TWO – DECLARATORY JUDGMENT
### (Additional Allegations Specific to F&C)

61.    The Archdiocese realleges and incorporates paragraph 1 through 60 as if fully set forth herein.

62.    F&C has denied the issuance of Policy No. XP74084 and has not confirmed the terms of Policy No. XP128258.

63.    An actual controversy of a justiciable nature currently exists between the Archdiocese and F&C concerning the existence and terms and conditions of Policy No. XP74084 and the terms and conditions of Policy No. XP128258.

64.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

   a)    F&C Policy No. XP74084 provides bodily injury coverage for the period August 1, 1949 – August 1, 1952, with applicable limits of $100,000 per person per year with no aggregate limits.

   b)    F&C Policy No. XP128258 provides bodily injury coverage for the period August 1, 1952 – August 1, 1955, with limits of $100,000 per person per year with no aggregate limits.

   c)    The Archdiocese seeks a declaration of the terms and conditions of each F&C Policy.

## COUNT THREE – DECLARATORY JUDGMENT
### (Additional Allegations Specific to FFIC)

65.    The Archdiocese realleges and incorporates paragraph 1 through 64 as if fully set forth herein.

66. FFIC has refused to confirm the issuance and the terms of the FFIC Policies, and has refused to confirm that the policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

67. An actual controversy of a justiciable nature currently exists between the Archdiocese and FFIC regarding the foregoing.

68. Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

   a)  FFIC Policy No. GAC312672 provides bodily injury coverage for the period August 1, 1955 – August 1, 1958, with applicable limits of $100,000 per person per year with no aggregate limits.

   b)  FFIC Policy No. CL331931 provides bodily injury coverage for the period August 1, 1958 – August 1, 1961, with applicable limits of $100,000 per person per year with no aggregate limits.

   c)  Both FFIC Policies provide coverage to the Archdiocese for all sums the Archdiocese is legally obligated to pay as damages because of bodily injury, including the Clergy Abuse Claims, arising from accidents occurring within the United States, Canada and Newfoundland.  Neither the Endorsement limiting coverage for "parishes" only to those listed, nor any list of locations, operate to constrict coverage for the Archdiocese.

## COUNT FOUR – DECLARATORY JUDGMENT
### (Additional Allegations Specific to NFIC)

69.     The Archdiocese realleges and incorporates paragraph 1 through 68 as if fully set forth herein.

70.     NFIC has refused to confirm that the NFIC Policy provides coverage for the Archdiocese relating to Clergy Abuse Claims.

71.     An actual controversy of a justiciable nature currently exists between the Archdiocese and NFIC regarding the foregoing.

72.     Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)     NFIC Policy No. HO4527587 provides to the Archdiocese $500,000 in bodily injury coverage per occurrence per year for each year August 16, 1963 – August 16, 1966 with no aggregate limits.  Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.

## COUNT FIVE – DECLARATORY JUDGMENT
### (Additional Allegations Specific to International)

73.     The Archdiocese realleges and incorporates paragraph 1 through 72 as if fully set forth herein.

74.     International has refused to confirm the terms and conditions of the International Policy and has refused to confirm that the International Policy provides coverage for the Clergy Abuse Claims.

75.    An actual controversy of a justiciable nature currently exists between the Archdiocese and International regarding the foregoing.

76.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

    a)    The International Policy provides bodily injury coverage for the period August 1, 1967 – August 1, 1970, with applicable limits of $100,000 per person per year, with no applicable aggregate limit.

## COUNT SIX – DECLARATORY JUDGMENT
## (Additional Allegations Specific to Continental)

77.    The Archdiocese realleges and incorporates paragraph 1 through 76 as if fully set forth herein.

78.    Continental has refused to confirm the issuance and the terms of the Continental Policy and has refused to confirm that the policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

79.    An actual controversy of a justiciable nature currently exists between the Archdiocese and Continental regarding the foregoing.

80.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

    a)    The Continental Policy provides bodily injury coverage for the period August 17, 1966 – August 17, 1969 with $3 million in limits excess of underlying insurance ($100,000) per person per year with no applicable aggregate limits.

b)     The Archdiocese seeks a declaration of the terms and conditions of the Continental Policy, including that the Continental Policy includes Insuring Agreement P1-40103-A.

## COUNT SEVEN – DECLARATORY JUDGMENT
### (Additional Allegations Specific to Hartford)

81.     The Archdiocese realleges and incorporates paragraph 1 through 80 as if fully set forth herein.

82.     Hartford has refused to confirm the terms of the Hartford Policy and has refused to confirm that the policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

83.     An actual controversy of a justiciable nature currently exists between the Archdiocese and Hartford regarding the foregoing.

84.     Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)     The Hartford Policy provides bodily injury coverage for the period August 1, 1970 – August 1, 1973, with applicable limits of $100,000 per person per year, with no applicable aggregate limits.

## COUNT EIGHT – DECLARATORY JUDGMENT
### (Additional Allegations Specific to American Home)

85.     The Archdiocese realleges and incorporates paragraph 1 through 84 as if fully set forth herein.

86.     American Home has refused to confirm the terms of the American Home Policies and has refused to confirm that the policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

87.     An actual controversy of a justiciable nature currently exists between the Archdiocese and American Home regarding the foregoing.

88.     Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)      American Home Policy No. CE2598055 provides $3 million in limits per occurrence per year excess $100,000 per person underlying limits, for each year August 17, 1969 – August 17, 1972.

b)      As amended by Endorsement #7, American Home Policy No. BE3374208 provides $5 million in limits per occurrence per year excess $100,000 per person underlying limits, for each year August 17, 1972 – August 17, 1975.

c)      Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.  No aggregate limit applies to the Clergy Abuse Claims under either of the American Home Policies.

## COUNT NINE – DECLARATORY JUDGMENT
### (Additional Allegations Specific to Aetna)

89.     The Archdiocese realleges and incorporates paragraph 1 through 88 as if fully set forth herein.

90.    Aetna has refused to confirm the terms of the Aetna Policies and has refused to confirm that the policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

91.    An actual controversy of a justiciable nature currently exists between the Archdiocese and Aetna regarding the foregoing.

92.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)    Aetna Policy No. 37AL188420 provides $300,000 in bodily injury coverage per occurrence per year for each year August 1, 1973 – August 1, 1974.    The other Aetna Primary Policies 37SM802875FCA for the period August 1, 1974 – August 1, 1977, 37SM802875FCA7 for the period August 1, 1977 – August 1, 1978, 37SM10285FCA for the period August 1, 1978 – August 1, 1979, and 37SM15868FCA for the period August 1, 1979 – July 1, 1980 each provide $500,000 in bodily injury coverage per occurrence per year for their respective coverage years.

b)    Aetna Policy No. 37XS1768WCA and Aetna Policy No. 37XS2046WCA each provide $5 million in limits per occurrence per year excess $500,000 per occurrence underlying limits, for their respective coverage years (August 17, 1975 – August 17, 1976 and August 17, 1976 – August 17, 1977).    Aetna Policy No. 37XS2401WCA, and Aetna Policy No. 37XS2831WCA, and Aetna

Policy No. 37XS3399WCA each provide $3 million in limits per occurrence per year excess $500,000 per occurrence underlying limits, for their respective coverage years (August 17, 1977 – August 17, 1978, August 17, 1978 – July 1, 1979, and July 1, 1979 – July 1, 1980).

c)    Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.  No aggregate limits in any of the Aetna Policies apply to the Clergy Abuse Claims.

## COUNT TEN – DECLARATORY JUDGMENT
### (Additional Allegations Specific to London Market Insurers)

93.    The Archdiocese realleges and incorporates paragraph 1 through 92 as if fully set forth herein.

94.    The London Market Insurers have refused to confirm that the London Market Insurers' Policies provide coverage for the Archdiocese relating to Clergy Abuse Claims and have refused to confirm the status of exhaustion of the retention in the policies comprising the first layer of coverage in the London Market Insurers' Policies and whether the London Market Insurers have fully paid amounts due under the "Aggregate Agreement" insurance.  In addition, the Archdiocese and the London Market Insurers disagree as to the terms and conditions of the London Market Insurers' Policies.

95.    An actual controversy of a justiciable nature currently exists between the Archdiocese and the London Market Insurers regarding the foregoing.

96.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)    A declaration as to the application of the terms and conditions of each of the London Market Insurers' Policies.

b)    The Archdiocese's retentions under the policies comprising the first layer of coverage in the London Market Insurers' Policies have been exhausted for certain policy years, including the September 1, 1980 – September 1, 1981 policy year, the September 1, 1981 – September 1, 1982 policy year, and the September 1, 1983 – September 1, 1984 policy year.

c)    The meaning of the "per loss" limits of the London Market Insurers' First Layer Policies.

d)    The application of the London Market Insurers' Policies to the Clergy Abuse Claims.

e)    Endorsement No. 8 in Policy No. ISL 3613 and Policy No. ICO 5387 does not apply to the Clergy Abuse Claims.

## COUNT ELEVEN – DECLARATORY JUDGMENT
### (Additional Allegations Specific to Interstate)

97.    The Archdiocese realleges and incorporates paragraph 1 through 96 as if fully set forth herein.

98.    Interstate has refused to confirm that the Interstate Policies provide coverage for the Archdiocese relating to Clergy Abuse Claims.

99.    An actual controversy of a justiciable nature currently exists between the Archdiocese and Interstate regarding the foregoing.

100.    Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as follows:

a)    Interstate Policy Nos. 183152670 and 830170075 provide coverage in the amount of the difference between underlying including retention and $5 million per occurrence for damages from bodily injury with no aggregate limits.

b)    Interstate Policy No. 830172570 provides coverage in the amount of the difference between underlying including self-insured retention and $1 million per occurrence.

c)    Endorsement No. 3 in Interstate Policy No. 830172570 does not apply to the Clergy Abuse Claims.

### COUNT TWELVE – DECLARATORY JUDGMENT
### (Additional Allegations Specific to Colonial Penn)

101.    The Archdiocese realleges and incorporates paragraph 1 through 100 as if fully set forth herein.

102.    Colonial Penn has refused to confirm that the Colonial Penn Policy provides coverage for the Archdiocese relating to Clergy Abuse Claims.

103.    An actual controversy of a justiciable nature currently exists between the Archdiocese and Colonial Penn regarding the foregoing.

104.     Pursuant to 28 U.S.C. § 2201, the Archdiocese is entitled to a declaration as
follows:

   a)     A declaration as to the terms and conditions of the Colonial Penn
          Policy.

   b)     Colonial Penn Policy No. XL150030 provides $4 million in limits
          per occurrence per year excess $1 million for each year September 1,
          1985 – September 1, 1986.

   c)     Each Clergy Abuse Claim constitutes one occurrence of bodily
          injury for each year in which an incident of abuse occurred.

   d)     Endorsement No. 2 in the Colonial Penn Policy does not apply to the
          Clergy Abuse Claims.

**COUNT THIRTEEN – INJUNCTIVE AND OTHER ANCILLARY RELIEF**

105.     The Archdiocese realleges and incorporates paragraph 1 through 104 as if
fully set forth herein.

106.     The Archdiocese is entitled to injunctive and other ancillary relief
necessary to preserve this Court's jurisdiction over the parties and the issues herein and to
aid in the enforcement of the declaratory relief, and requests additional judgment as
appropriate.

   WHEREFORE, the Archdiocese requests judgment of this Court as follows:

   A declaration against all Carriers named or referenced above that:

   a)     With respect to each Clergy Abuse Claim that triggers a Carrier's
          Policy, that as to such Clergy Abuse Claim and such Policy,

i)      The injuries described in each Clergy Abuse Claim constitute bodily or personal injury, and the damages sought in each Clergy Abuse Claim are because of bodily or personal injury.

ii)     The bodily injury/personal injury alleged in each Clergy Abuse Claim was caused by "accident" or "occurrence" as those terms are used in each of the Carriers' Policies.

iii)    No exclusions apply to limit coverage for the Clergy Abuse Claims.

iv)     The appropriate trigger of coverage for the Clergy Abuse Claims.

v)      The method of allocation of liability the Archdiocese may have, if any, in connection with the Clergy Abuse Claims among triggered policy years.

vi)     Each Carrier has, or will have upon satisfaction of any retained limit, a duty to indemnify the Archdiocese for damages paid in the form of verdicts, judgments or settlements and defense costs incurred in connection with the Clergy Abuse Claims.

vii)    Each primary Carrier has a duty to defend and indemnify the Archdiocese in connection with the Clergy Abuse Claims.

b)    Each Carrier shares responsibility for (i) fees incurred to achieve a global settlement with plaintiffs' attorney Jeff Anderson's clients;

and (ii) legal fees and expenses incurred by the Archdiocese in responding to the Carriers' request for documentation relating to the Clergy Abuse Claims.

A declaration against F&C that:

c)    F&C Policy No. XP74084 provides bodily injury coverage for the period August 1, 1949 – August 1, 1952, with applicable limits of $100,000 per person per year with no aggregate limits.

d)    F&C Policy No. XP128258 provides bodily injury coverage for the period August 1, 1952 – August 1, 1955, with limits of $100,000 per person per year with no aggregate limits.

e)    The Archdiocese seeks a declaration of the terms and conditions of each F&C Policy.

A declaration against FFIC that:

f)    FFIC Policy No. GAC312672 provides bodily injury coverage for the period August 1, 1955 – August 1, 1958, with applicable limits of $100,000 per person per year with no aggregate limits.

g)    FFIC Policy No. CL331931 provides bodily injury coverage for the period August 1, 1958 – August 1, 1961, with applicable limits of $100,000 per person per year with no aggregate limits.

h)    Both FFIC Policies provide coverage to the Archdiocese for all sums the Archdiocese is legally obligated to pay as damages because of bodily injury, including the Clergy Abuse Claims, arising from

accidents occurring within the United States, Canada and Newfoundland.  Neither the Endorsement limiting coverage for "parishes" only to those listed, nor any list of locations, operate to constrict coverage for the Archdiocese.

A declaration against NFIC that:

i)    NFIC Policy No. HO4527587 provides to the Archdiocese $500,000 in bodily injury coverage per occurrence per year for each year August 16, 1963 – August 16, 1966 with no aggregate limits.  Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.

A declaration against International that:

j)    The International Policy provides bodily injury coverage for the period August 1, 1967 – August 1, 1970, with applicable limits of $100,000 per person per year, with no applicable aggregate limit.

A declaration against Continental that:

k)    The Continental Policy provides bodily injury coverage for the period August 17, 1966 – August 17, 1969 with $3 million in limits excess of underlying insurance ($100,000) per person per year with no applicable aggregate limits.

l)    The Archdiocese seeks a declaration of the terms and conditions of the Continental Policy, including that the Continental Policy includes Insuring Agreement P1-40103-A.

A declaration against Hartford that:

m)    The Hartford Policy provides bodily injury coverage for the period
      August 1, 1970 – August 1, 1973, with applicable limits of $100,000
      per person per year, with no applicable aggregate limits.

A declaration against American Home that:

n)    American Home Policy No. CE2598055 provides $3 million in
      limits per occurrence per year excess $100,000 per person
      underlying limits, for each year August 17, 1969 – August 17, 1972.

o)    As amended by Endorsement #7, American Home Policy No.
      BE3374208 provides $5 million in limits per occurrence per year
      excess $100,000 per person underlying limits, for each year
      August 17, 1972 – August 17, 1975.

p)    Each Clergy Abuse Claim constitutes one occurrence of bodily
      injury for each year in which an incident of abuse occurred.  No
      aggregate limit applies to the Clergy Abuse Claims under either of
      the American Home Policies.

A declaration against Aetna that:

q)    Aetna Policy No. 37AL188420 provides $300,000 in bodily injury
      coverage per occurrence per year for each year August 1, 1973 –
      August 1, 1974. The other Aetna Primary Policies 37SM802875FCA
      for the period August 1, 1974 – August 1, 1977, 37SM802875FCA7
      for the period August 1, 1977 – August 1, 1978, 37SM10285FCA

for the period August 1, 1978 – August 1, 1979, and 37SM15868FCA for the period August 1, 1979 – July 1, 1980 each provide $500,000 in bodily injury coverage per occurrence per year for their respective coverage years.

r)      Aetna Policy No. 37XS1768WCA and Aetna Policy No. 37XS2046WCA each provide $5 million in limits per occurrence per year excess $500,000 per occurrence underlying limits, for their respective coverage years (August 17, 1975 – August 17, 1976 and August 17, 1976 – August 17, 1977).  Aetna Policy No. 37XS2401WCA, and Aetna Policy No. 37XS2831WCA, and Aetna Policy No. 37XS3399WCA each provide $3 million in limits per occurrence per year excess $500,000 per occurrence underlying limits, for their respective coverage years (August 17, 1977 – August 17, 1978, August 17, 1978 – July 1, 1979, and July 1, 1979 – July 1, 1980).

s)      Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.  No aggregate limits in any of the Aetna Policies apply to the Clergy Abuse Claims.

A declaration against the London Market Insurers that:

t)      As to the application of the terms and conditions of each of the London Market Insurers' Policies.

u)      The Archdiocese's retentions under the policies comprising the first layer of coverage in the London Market Insurers' Policies have been exhausted for certain policy years, including the September 1, 1980 – September 1, 1981 policy year, the September 1, 1981 – September 1, 1982 policy year, and the September 1, 1983 – September 1, 1984 policy year.

v)      The meaning of the "per loss" limits of the London Market Insurers' First Layer Policies.

w)      The application of the London Market Insurers' Policies to the Clergy Abuse Claims.

x)      Endorsement No. 8 in Policy No. ISL 3613 and Policy No. ICO 5387 does not apply to the Clergy Abuse Claims.

A declaration against Interstate that:

y)      Interstate Policy Nos. 183152670 and 830170075 provide coverage in the amount of the difference between underlying including retention and $5 million per occurrence for damages from bodily injury with no aggregate limits.

z)      Interstate Policy No. 830172570 provides coverage in the amount of the difference between underlying including self-insured retention and $1 million per occurrence.

aa)     Endorsement No. 3 in Interstate Policy No. 830172570 does not apply to the Clergy Abuse Claims.

A declaration against Colonial Penn that:

bb)    As to the terms and conditions of the Colonial Penn Policy.

cc)    Colonial Penn Policy No. XL150030 provides $4 million in limits per occurrence per year excess $1 million for each year September 1, 1985 – September 1, 1986.

dd)    Each Clergy Abuse Claim constitutes one occurrence of bodily injury for each year in which an incident of abuse occurred.

ee)    Endorsement No. 2 in the Colonial Penn Policy does not apply to the Clergy Abuse Claims.

## JURY TRIAL DEMAND

The Archdiocese requests a jury trial on all issues so triable.


Dated:  November 24, 2014                    **BRIGGS AND MORGAN, P.A.**


By: */s/ Lauren E. Lonergan*
    Charles B. Rogers (#130588)
    Lauren E. Lonergan (#143443)
    Susan E. Gelinske (#027477X)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400

**ATTORNEYS FOR DEFENDANT
ARCHDIOCESE OF SAINT PAUL
AND MINNEAPOLIS**