# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Archdiocese of Saint Paul and Minneapolis, | Case No. 14-cv-4852-RHK-BRT |
| Plaintiff, | |
| v. | |
| The Continental Insurance Company, as successor to The Fidelity and Casualty Company of New York, et al., | **TRAVELERS CASUALTY AND SURETY COMPANY'S ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFF'S COMPLAINT, AND COUNTERCLAIM** |
| Defendants. | |
| The Continental Insurance Company, as successor to The Fidelity and Casualty Company of New York, et al. | |
| Counterclaim Plaintiffs, Crossclaim Plaintiffs, and Third-Party Plaintiffs, | |
| v. | |
| The Archdiocese of Saint Paul and Minneapolis, et al. | |
| Counterclaim Defendant, Crossclaim Defendants, and Third-Party Defendants, | |
| Travelers Casualty and Surety Company, | |
| Counterclaim Plaintiff, | |
| v. | |
| Archdiocese of Saint Paul and Minneapolis, | |
| Counterclaim Defendant. | |

## ANSWER

Defendant Travelers Casualty and Surety Company (formerly known as Aetna
Casualty and Surety Company) ("Travelers") answers Plaintiff's Complaint For
Declaratory Relief (the "Complaint") as follows:

### BACKGROUND

1.      Travelers lacks knowledge or information sufficient to form a belief as to
the truth or accuracy of the allegations in paragraph 1 of the Complaint.

2.      In response to Complaint Paragraph 2, Travelers admits that, effective May
25, 2013, the State of Minnesota enacted the Minnesota Child Victims Act, Minn. Stat. §
541.073.  The remaining allegations in paragraph 2 of the Complaint are conclusions of
law to which no response is required.  To the extent a response is required, Travelers
states that the remaining allegations in paragraph 2 provide an incomplete and therefore
inaccurate summary of Minn. Stat. § 541.073 and, on that basis, denies them.

3.      In response to Complaint Paragraph 3, Travelers admits that, since the
enactment of the Minnesota Child Victims Act, the Archdiocese has been named as a
defendant in lawsuits, and has received Notices of Claim, alleging, among other things,
that the Archdiocese was negligent in not preventing sexual abuse by clergy associated
with the Archdiocese.  Travelers lacks knowledge or information sufficient to form a
belief as to the truth or accuracy of the remaining allegations in paragraph 3 of the
Complaint.

4.      In response to Complaint Paragraph 4, Travelers denies that any insurance
policy issued by Travelers is a source of funds for any resolution of the financial aspects

2

of sexual abuse claims asserted against the Archdiocese.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 4 of the Complaint.

5.      In response to Complaint Paragraph 5, Travelers denies that the Archdiocese purchased any insurance from Travelers to cover the types of alleged injuries for which persons asserting sexual abuse claims against the Archdiocese seek recovery.  Travelers admits that the Archdiocese has tendered to Travelers certain claims against the Archdiocese based on alleged sexual abuse; that Travelers has reserved its rights on various grounds; and that Travelers has not agreed to contribute toward a global resolution.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 5 of the Complaint.

## THE PARTIES

6.      In response to Complaint Paragraph 6, Travelers admits the Archdiocese is a corporation organized under the laws of the State of Minnesota with its principal place of business in Minnesota and the allegations in the last sentence of paragraph 6 of the Complaint.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 6 of the Complaint.

7.      Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 7 of the Complaint.

8.      Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 8 of the Complaint.

9. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 9 of the Complaint.

10. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 10 of the Complaint.

11. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 11 of the Complaint.

12. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 12 of the Complaint.

13. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 13 of the Complaint.

14. In response to Complaint Paragraph 14, Travelers admits the allegations in the first sentence of paragraph 14 of the Complaint. The second sentence of paragraph 14 is not an allegation that requires a response. If a response is required, that allegation is denied.

15. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 15 of the Complaint.

16. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 16 of the Complaint.

17. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 17 of the Complaint.

18. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 18 of the Complaint.

### JURISDICTION AND VENUE

19.     Travelers admits the allegations in paragraph 19 of the Complaint.

20.     In response to Complaint Paragraph 20, Travelers admits that the amount in controversy is in excess of $75,000, but lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 20 of the Complaint.

21.     Travelers denies the allegations in paragraph 21 of the Complaint.

22.     In response to Complaint Paragraph 22, Travelers admits that the Court has personal jurisdiction over Travelers.  The remaining allegations in paragraph 22 of the Complaint are not directed at Travelers and, therefore, no response is required.  To the extent a response is required, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

23.     In response to Complaint Paragraph 23, Travelers admits that it is authorized to do business in Minnesota and is licensed as a property and casualty insurer in Minnesota.  The remaining allegations in paragraph 23 of the Complaint are not directed at Travelers and, therefore, no response is required.  To the extent a response is required, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

24.     The allegations in paragraph 24 of the Complaint are not directed at Travelers and, therefore, no response is required.  To the extent a response is required, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

5

25.     In response to Complaint Paragraph 25, Travelers admits that venue is proper in this District under 28 U.S.C. §1391(b)(2) with respect to the Archdiocese's claims against Travelers because a substantial part of the events or omissions giving rise to the dispute occurred in this District.  Travelers denies that it has refused "to accede to the Archdiocese's assertions of its rights in certain respects" or otherwise done anything improper.

FACTS

26.     The allegations in paragraph 26 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

27.     The allegations in paragraph 27 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

28.     The allegations in paragraph 28 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

29.     The allegations in paragraph 29 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary,

CASE 03:14-cv-04052-RHK-BRT   Document 11   Filed 01/14/15   Page 7 of 44

Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

30.     The allegations in paragraph 30 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

31.     The allegations in paragraph 31 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

32.     The allegations in paragraph 32 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

33.     The allegations in paragraph 33 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

34.     The allegations in paragraph 34 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

35.     The allegations in paragraph 35 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

36.     The allegations in paragraph 36 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

37.     The allegations in paragraph 37 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

38.     The allegations in paragraph 38 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

39.     The allegations in paragraph 39 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

40.     Travelers admits the allegations in paragraph 40 of the Complaint.  (The insurance policies identified in paragraph 40 of the Complaint as the "Aetna Primary

Policies" shall be referred to herein as the "Primary Policies," the policies identified as

the "Aetna Umbrella Policies" shall be referred to as the "XS Policies," and the Primary

Policies and the XS Policies shall be referred to as the "Travelers Policies.")

41.     Travelers denies the allegations in paragraph 41 because they employ

ellipses in a way that alters the meaning of the quoted language.  Travelers admits that

the Primary Policies state that Travelers "will pay on behalf of the insured all sums which

the insured shall become legally obligated to pay as damages because of bodily injury . . .

to which this insurance applies, caused by an occurrence, and [Travelers] shall have the

right and duty to defend any suit against the insured seeking damages on account of such

bodily injury, even if any of the allegations of the suit are groundless, false or fraudulent,

but [Travelers] shall not be obligated to pay any claim or judgment or defend any suit

after the applicable limit of the [Travelers] liability has been exhausted by payment of

judgments or settlements."  Travelers further admits that the XS Policies provide:

Section 2.     INSURANCE AGREEMENTS

> 2.1   COVERAGE.  The company will indemnify the insured for
> ultimate net loss in excess of the applicable underlying limit
> which the insured shall become legally obligated to pay as
> damages because of
> A.     Personal Injury . . .
>
> * * * *
>
> to which this policy applies, caused by an occurrence . . . .

Travelers also admits that the XS Policies provide:  "'[P]ersonal injury' means bodily

injury, shock, mental anguish, sickness or disease, including death at any time resulting

therefrom . . . ."

9

42.     In response to Complaint Paragraph 42, Travelers admits that Policy No. 37
AL 188420 CCA has a $300,000 "each occurrence" limit; that Policy No. 37 SM 802875
FCA 7, Policy No. 37 SM 10285 FCA, and Policy No. 37 SM 15868 FCA have $500,000
"each occurrence" limits; that Policy No. 37 SM 802875 FCA, when issued, had an "each
occurrence" limit of $300,000; that Policy No. 37 SM 802875 FCA contains an
endorsement that became effective on August 15, 1975 and amended the policy to
provide that the "each occurrence" limit was $500,000; that Policy Nos. 37 XS 1768
WCA and 37 XS 2046 WCA have $5,000,000 "each occurrence" limits; that Policy Nos.
37 XS 2401 WCA, 37 XS 2831 WCA, and 37 XS 3399 WCA have $3,000,000 "each
occurrence" limits; and that, if the Archdiocese was otherwise entitled to coverage under
the "bodily injury" liability coverage afforded by the foregoing policies in connection
with the sexual abuse claims asserted against the Archdiocese (hereinafter, the "Sexual
Abuse Claims"), which it is not, no "aggregate" limit would apply.  Travelers denies that
the "each occurrence" limits in the Travelers Policies apply "per year" and that those
policies potentially afford coverage for the Archdiocese in connection with the Sexual
Abuse Claims.  Travelers denies the allegations in paragraph 42 of the Complaint to the
extent they are not admitted in the first sentence of this paragraph.

43.     Travelers denies the allegations in paragraph 43 of the Complaint.

44.     The allegations in paragraph 44 of the Complaint are not directed at
Travelers and, therefore, no response is necessary.  To the extent a response is necessary,
Travelers lacks knowledge or information sufficient to form a belief as to the truth or
accuracy of those allegations.

45.     The allegations in paragraph 45 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

46.     The allegations in paragraph 46 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

47.     The allegations in paragraph 47 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

48.     The allegations in paragraph 48 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

49.     The allegations in paragraph 49 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

50.     The allegations in paragraph 50 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary,

Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

51.      The allegations in paragraph 51 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

52.      The allegations in paragraph 52 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

53.      The allegations in paragraph 53 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

54.      In response to Complaint Paragraph 54, Travelers denies that all conditions precedent have been met with respect to the Travelers Policies.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 54.

55.      In response to Complaint Paragraph 55, Travelers admits that the Archdiocese tendered certain of the Sexual Abuse Claims to Travelers and the remaining allegations of paragraph 55 of the Complaint, except that Travelers denies all allegations

in paragraph 55 to the extent they suggest that the Travelers Policies potentially afford coverage in connection with the Sexual Abuse Claims.

<u>COUNT ONE—DECLARATORY JUDGMENT (All Defendants)</u>

56.    In response to Complaint Paragraph 56, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 55 as though fully set forth herein.

57.    Travelers admits the allegations in paragraph 57 of the Complaint to the extent they are directed at Travelers.  Travelers denies that it has any obligation to defend or indemnify the Archdiocese in connection with the Sexual Abuse Claims.  Travelers further states that it has reserved its right to refuse to defend or indemnify the Archdiocese with respect to the Sexual Abuse Claims.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 57 of the Complaint.

58.    Travelers denies the allegations in paragraph 58 of the Complaint as they relate to Travelers and that it has any obligation to defend or indemnify the Archdiocese in connection with the Sexual Abuse Claims.  Travelers further states that it has reserved its right to refuse to defend or indemnify the Archdiocese with respect to the Sexual Abuse Claims based on various defenses, including those identified in paragraph 58 of the Complaint.  Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 58 of the Complaint.

59.    Travelers admits the allegation in paragraph 59 as they relate to Travelers. Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 59 of the Complaint.

60.    Travelers denies the allegations in paragraph 60 of the Complaint.

## COUNT TWO—DECLARATORY JUDGMENT
### (Additional Allegations Specific to F&C)

61.    In response to Complaint Paragraph 61, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 60 as though fully set forth herein.

62.    The allegations in paragraph 62 of the Complaint are not directed at Travelers and, therefore, no response is necessary. To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

63.    The allegations in paragraph 63 of the Complaint are not directed at Travelers and, therefore, no response is necessary. To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

64.    The allegations in paragraph 64 of the Complaint are not directed at Travelers and, therefore, no response is necessary. To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT THREE—DECLARATORY JUDGMENT
### (Additional Allegations Specific to FFIC)

65.    In response to Complaint Paragraph 65, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 64 as though fully set forth herein.

66.    The allegations in paragraph 66 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

67.    The allegations in paragraph 67 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

68.    The allegations in paragraph 68 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT FOUR—DECLARATORY JUDGMENT
### (Additional Allegations Specific to NFIC)

69.    In response to Complaint Paragraph 69, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 68 as though fully set forth herein.

70.     The allegations in paragraph 70 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

71.     The allegations in paragraph 71 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

72.     The allegations in paragraph 72 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT FIVE—DECLARATORY JUDGMENT
### (Additional Allegations Specific to International)

73.     In response to Complaint Paragraph 73, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 72 as though fully set forth herein.

74.     The allegations in paragraph 74 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

75.    The allegations in paragraph 75 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

76.    The allegations in paragraph 76 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT SIX—DECLARATORY JUDGMENT
### (Additional Allegations Specific to Continental)

77.    In response to Complaint Paragraph 77, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 76 as though fully set forth herein.

78.    The allegations in paragraph 78 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

79.    The allegations in paragraph 79 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

80.     The allegations in paragraph 80 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT SEVEN—DECLARATORY JUDGMENT
### (Additional Allegations Specific to Hartford)

81.     In response to Complaint Paragraph 81, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 80 as though fully set forth herein.

82.     The allegations in paragraph 82 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

83.     The allegations in paragraph 83 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

84.     The allegations in paragraph 84 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT EIGHT—DECLARATORY JUDGMENT
### (Additional Allegations Specific to American Home)

85.     In response to Complaint Paragraph 85, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 84 as though fully set forth herein.

86.     The allegations in paragraph 86 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

87.     The allegations in paragraph 87 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

88.     The allegations in paragraph 88 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT NINE—DECLARATORY JUDGMENT
### (Additional Allegations Specific to Aetna)

89.     In response to Complaint Paragraph 89, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 88 as though fully set forth herein.

90.     Travelers admits that it has refused to confirm that the Travelers Policies provide coverage for the Archdiocese in connection with the Sexual Abuse Claims. Travelers denies that it has any obligation to defend or indemnify the Archdiocese in connection with the Sexual Abuse Claims. Travelers further states that it has reserved its right to refuse to defend or indemnify the Archdiocese with respect to the Sexual Abuse Claims. Travelers denies that it has "refused to confirm the terms" of the Travelers Policies.

91.     Travelers admits the allegations in paragraph 91 of the Complaint.

92.     Travelers denies the allegations in paragraph 92 of the Complaint.

## COUNT TEN—DECLARATORY JUDGMENT
### (Additional Allegations Specific to London Market Insurers)

93.     In response to Complaint Paragraph 93, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 92 as though fully set forth herein.

94.     The allegations in paragraph 94 of the Complaint are not directed at Travelers and, therefore, no response is necessary. To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

95.     The allegations in paragraph 95 of the Complaint are not directed at Travelers and, therefore, no response is necessary. To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

96.     The allegations in paragraph 96 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

### COUNT ELEVEN—DECLARATORY JUDGMENT
### (Additional Allegations Specific to Interstate)

97.     In response to Complaint Paragraph 97, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 96 as though fully set forth herein.

98.     The allegations in paragraph 98 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

99.     The allegations in paragraph 99 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

100.    The allegations in paragraph 100 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT TWELVE—DECLARATORY JUDGMENT
### (Additional Allegations Specific to Colonial Penn)

101.   In response to Complaint Paragraph 101, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 100 as though fully set forth herein.

102.   The allegations in paragraph 102 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

103.   The allegations in paragraph 103 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

104.   The allegations in paragraph 104 of the Complaint are not directed at Travelers and, therefore, no response is necessary.  To the extent a response is necessary, Travelers lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations.

## COUNT THIRTEEN-INJUNCTIVE AND OTHER ANCILLARY RELIEF

105.   In response to Complaint Paragraph 105, Travelers repeats and reiterates each and every response and allegation contained in this Answer's Paragraphs 1 through 104 as though fully set forth herein.

106.   Travelers denies the allegations in paragraph 106 of the Complaint.

## **ADDITIONAL DEFENSES**

Without assuming any burden of proof or persuasion that would otherwise rest on the Archdiocese, Travelers asserts the following additional defenses:

### First Additional Defense

The Complaint, and each claim for relief against Travelers therein, fails to state a claim upon which relief can be granted.

### Second Additional Defense

The Complaint, and each claim for relief against Travelers therein, is barred and precluded, or limited in whole or in part, by the terms, conditions, limitations, exclusions, and/or definitions of the Travelers Policies.

### Third Additional Defense

To the extent (i) the Travelers Policies afford coverage for liability for "bodily injury," defined as "bodily injury, sickness or disease . . .," and (ii) the injuries alleged in the Sexual Abuse Claims involve emotional or psychological injury, as opposed to "bodily injury," the Travelers Policies afford no coverage

### Fourth Additional Defense

The Sexual Abuse Claims do not allege any injury that was caused by an "occurrence," as that term is defined by the Travelers Policies.

### Fifth Additional Defense

To the extent the Sexual Abuse Claims involve injury that occurred outside the effective periods of the Travelers Policies, the Travelers Policies afford no coverage.

<u>Sixth Additional Defense</u>

Travelers has no duty to defend the Archdiocese in connection with the Sexual
Abuse Claims to the extent there is no "suit."

<u>Seventh Additional Defense</u>

The Travelers Policies afford no coverage to the extent the Archdiocese concealed
or misrepresented any material fact or circumstance concerning the insurance or the
subject thereof, either before or after issuance.

<u>Eighth Additional Defense</u>

The Underlying Claims involve "known losses" or "losses in progress" or injuries
that were known by the Archdiocese to be certain or substantially certain to occur or were
otherwise not fortuitous.

<u>Ninth Additional Defense</u>

Public policy bars or limits coverage under the Travelers Policies.

<u>Tenth Additional Defense</u>

The Travelers Policies respond only to covered awards of damages for covered
injuries, not to costs incurred in complying with injunctive relief, attorney's fees awarded
by statute or rule, or punitive damages and, therefore, the Travelers Policies afford no
coverage with respect to costs or expenses incurred by the Archdiocese in defending
against or complying with a grant of injunctive relief, an award of attorneys' fees or
punitive damages.

<u>Eleventh Additional Defense</u>

The injuries alleged in the Sexual Abuse Claims were "expected" or "intended" by

the Archdiocese.

## Twelfth Additional Defense

Travelers has no duty to indemnify under the XS Policies with respect to any amount that is not in excess of the applicable underlying limits.

## Thirteenth Additional Defense

Travelers has no duty under the XS Policies to defend the Archdiocese in connection with any suit seeking damages that are not payable on behalf of the Archdiocese under the terms of underlying insurance because of exhaustion of any limit of liability other than an underlying aggregate limit.

## Fourteenth Additional Defense

Travelers has no duty under the XS Policies to pay, or reimburse the Archdiocese for, any amounts in connection with any judgment or settlement or the defense or investigation of any claim or suit to the extent such amounts are covered by any other insurance.

## Fifteenth Additional Defense

Coverage under the Travelers Policies is barred to the extent that all conditions precedent and subsequent to liability or coverage have not been fulfilled.

## Sixteenth Additional Defense

Travelers has no duty to defend or indemnify the Archdiocese because the Archdiocese failed to comply with the notice conditions in the Travelers Policies, including without limitation the conditions requiring the Archdiocese to provide timely notice of occurrences or claims, and Travelers was prejudiced as a result.

### Seventeenth Additional Defense

Travelers has no duty to defend or indemnify the Archdiocese to the extent the Archdiocese breached provisions of the Travelers Policies requiring the Archdiocese to cooperate with and assist Travelers.

### Eighteenth Additional Defense

Travelers has no duty to indemnify or reimburse the Archdiocese in connection with any settlement entered into, payment made, obligation assumed, or expense incurred without the consent of Travelers.

### Nineteenth Additional Defense

Travelers has no duty to indemnify the Archdiocese unless the amount of the Archdiocese's obligation to pay has been finally determined either by judgment against the Archdiocese after an actual trial or written agreement signed by Travelers.

### Twentieth Additional Defense

The coverage afforded by the Travelers Policies is limited by the applicable limits of liability and the Travelers Policies afford no coverage, or the coverage they afford is limited, to the extent the applicable limits of liability have been impaired or exhausted.

### Twenty-First Additional Defense

Travelers' obligations, if any, are limited by the provisions in the Travelers Policies relating to "other insurance."

### Twenty-Second Additional Defense

Travelers' obligations, if any, are limited by its right to have liability allocated to other insurers and/or the Archdiocese.

Twenty-Third Additional Defense

Coverage under the Travelers Policies is barred to the extent of the applicability of Minn. Stat. §60A.08, subd. 9.

Twenty-Fourth Additional Defense

Travelers specifically denies each and every allegation set forth in the Complaint except as admitted, qualified or otherwise responded to.

## COUNTERCLAIM AGAINST PLAINTIFF

Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) ("Travelers"), as its Counterclaim against Plaintiff the Archdiocese of St. Paul and Minneapolis (the "Archdiocese"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 in which Travelers seeks, among other relief, an adjudication of its rights and obligations, if any, under certain insurance policies it issued to the Archdiocese in connection with underlying lawsuits and claims that were filed or asserted against the Archdiocese by plaintiffs or claimants who allege they were injured when they were sexually abused by individuals for whom the Archdiocese was purportedly responsible.  Travelers seeks a declaration that it is not obligated to defend or indemnify the Archdiocese in connection with the underlying lawsuits or the underlying claims.

2.     A declaratory judgment is appropriate in this matter because the Archdiocese claims it is entitled to a defense and indemnity from Travelers with respect to the underlying lawsuits and underlying claims and Travelers disputes that it is

27

obligated to provide such coverage pursuant to the insurance policies it issued to the Archdiocese.

## THE PARTIES

3.      Travelers is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in Connecticut.

4.      The Archdiocese is a Minnesota corporation with its principal place of business in Minnesota.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Archdiocese resides in this judicial district and because a substantial part of the events giving rise to this action occurred within the geographical confines of this judicial district.

7.      This Court has authority pursuant to 28 U.S.C. § 2201 to grant the declaratory and other relief requested by Travelers.

## THE INSURANCE CONTRACTS

8.      Travelers issued the following policies to the Archdiocese: Policy No. 37 AL 188420 CCA, effective August 1, 1973 to August 1, 1974 (the "1973-74 Primary Policy"); Policy No. 37 SM 802875 FCA, effective August 1, 1974 to August 1, 1977 (the "1974-77 Primary Policy"); Policy No. 37 SM 802875 FCA 7, effective August 1,

1977 to August 1, 1978 (the "1977-78 Primary Policy"); Policy No. 37 SM 10285 FCA, effective August 1, 1978 to August 1, 1979 (the "1978-79 Primary Policy"); and Policy No. 37 SM 15868 FCA, effective August 1, 1979 to July 1, 1980 (the "1979-80 Primary Policy") (collectively, the "Primary Policies").

9.     Travelers also issued the following policies to the Archdiocese: Policy No. 37 XS 1768 WCA, effective August 17, 1975 to August 17, 1976 (the "1975-76 XS Policy"); Policy No. 37 XS 2046 WCA, effective August 17, 1976 to August 17, 1977 (the "1976-77 XS Policy"); Policy No. 37 XS 2401 WCA, effective August 17, 1977 to August 17, 1978 (the "1977-78 XS Policy"); Policy No. 37 XS 2831 WCA, effective August 17, 1978 to July 1, 1979 (the "1978-79 XS Policy"); and Policy No. 37 XS 3399 WCA, effective July 1, 1979 to July 1, 1980 (the "1979-80 XS Policy") (collectively, the "XS Policies").   (The Primary Policies and the XS Policies shall be referred to collectively as the "Travelers Policies.")

10.    The Primary Policies provide that Travelers "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an occurrence, and [Travelers] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . ., but [Travelers] shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of [Travelers'] liability has been exhausted by payment of judgments or settlements."

11.    The Primary Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by any person which occurs during the policy period . . ."

and "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured."

12.     With respect to the limits of liability, the 1974-77 Primary Policy and the 1977-78 Primary Policy provide:

> Regardless of the number of (1) insureds under this policy, (2) persons . . . who sustain bodily injury . . ., or (3) claims made or suits brought on account of bodily injury . . ., the Company's liability is limited as follows:
>
> Coverage C—Bodily Injury Liability—The total liability of the Company for all damages . . . because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated as applicable to "each occurrence".
>
> * * * *
>
> Bodily Injury . . . Liability—For the purpose of determining the limit of the Company's liability, all bodily injury . . . arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

13.     The 1973-74 Primary Policy, the 1978-79 Primary Policy, and the 1979-80 Primary Policy contain provisions that are substantively the same as those in the preceding paragraph.

14.     The 1974-77 Primary Policy and the 1977-78 Primary Policies further provide:

> D.     INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT:
>
> 1.     In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also

reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or for the insured to the Company or any   of   its   authorized against as soon as practicable.

2.    If a claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

3.    The insured shall cooperate with the Company . . . .  The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expenses other than for first aid to others at the time of the accident.

\* \* \* \*

G.    ACTION AGAINST THE COMPANY:  No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

15.    The 1973-74 Primary Policy, the 1978-79 Primary Policy, and the 1979-80 Primary Policy contain conditions that are substantially the same as those set forth in the preceding paragraph.

16.    The 1974-77 Primary Policy and the 1977-78 Primary Policy further provide: "This entire policy shall be void if, whether before a loss, the insured has willfully, or after a loss, the insured has willfully with the intent to defraud, concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof[.]"

17.    The 1973-74 Primary Policy has an "each occurrence" limit of $300,000.

18.    The 1974-77 Primary Policy, when issued, had an "each occurrence" limit of $300,000.

19.    The 1974-77 Primary Policy contains an endorsement that became effective on August 15, 1975 and amended the policy to provide that the "each occurrence" limit was $500,000.

20.    The 1977-78 Primary Policy, the 1978-79 Primary Policy, and the 1979-80 Primary Policy have "each occurrence" limits of $500,000.

21.    The XS Policies provide:

Section 2.    INSURANCE AGREEMENTS

2.1    COVERAGE.  The company will indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of
A.    Personal Injury . . .

* * * *

to which this policy applies, caused by an occurrence . . . .

* * * *

2.3    DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE

(a)    The company shall defend any suit seeking damages which are not payable on behalf of the insured under the terms of the policies of Underlying Insurance described in Section I or any other available insurance
(1)    because such damages are not covered thereunder, or
(2)    because of exhaustion of an underlying aggregate limit of liability by payment of claims,

but which are payable under the terms of Section 2.1
(including damages wholly or partly within the amount
of the Retained Limit specified in Section 1) . . . .

\* \* \* \*

## Section 4.    LIMITS OF LIABILITY

4.1    Regardless of the number of (1) insureds under this policy,
(2) persons or organizations who sustain injury or damage, or
(3) claims made or suits brought on account of personal
injury . . . , the company's liability for ultimate net loss . . .
resulting from any one occurrence shall be limited to that
amount stated in Section 1 as applicable to "each occurrence"
. . . .

For the purpose of determining the limit of the company's
liability, all personal injury . . . arising out of continuous or
repeated exposure to substantially the same general
conditions shall be considered as arising out of one
occurrence.

## Section 5.    DEFINITIONS

\* \* \* \*

5.3    "applicable underlying limit" means

(a)    the amount of the applicable limits of liability of the
policies of Underlying Insurance as stated in Section 1
or any other available insurance, or the amount stated
in Section 1 as the Retained Limit, whichever is the
greater, less the amount or amounts, if any, by which
any aggregate limit so stated has been reduced solely
by payment of claims in respect of personal injury . . .,
or

(b)    if the insurance afforded by such policies of
Underlying Insurance is inapplicable to the occurrence,
the amount stated in Section 1 as the Retained Limit;

provided that the limits of liability of any such policy of
Underlying Insurance shall be deemed applicable irrespective

33

of (1) any defense which the underlying insurer may assert because of the insured's failure to comply with any condition of the policy . . . .[.]

\* \* \* \*

5.9    "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury . . . which is neither expected nor intended from the standpoint of the insured;

5.10   "personal injury" means bodily injury, shock, mental anguish, sickness or disease . . .;

\* \* \* \*

5.13   "ultimate net loss" means the sum actually paid or payable in cash in the settlement or satisfaction of any claim or suit for which the insured is liable either by adjudication or settlement with the written consent of the company[.]

Section 6.    CONDITIONS

\* \* \* \*

6.3    Insured's Duties in the Event of Occurrence, Claim or Suit.

(a)    Notice of Occurrence.  Upon the happening of any occurrence reasonably likely to involve any of the coverages of this policy, written notice containing the particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b)    Claim or Suit.  When in the judgment of the company an occurrence may involve damages in excess of the applicable underlying limit, the company may elect at any time to participate with the insured and the underlying insurers in the investigation, settlement and defense of all claims and suits in connection therewith.

In such event the insured and the company shall cooperate fully.

(c)     Assistance and Cooperation.   The insured shall cooperate with the underlying insurers as required by the terms of the policies of Underlying Insurance and comply with all the terms and conditions thereof[.]

\* \* \* \*

6.5     When Loss Payable.   The company's liability under this policy for ultimate net loss with respect to any occurrence shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the insured on account of such occurrence.   The insured shall make claim for any loss under this policy as soon as practicable after

(a)     the insured shall have paid ultimate net loss in excess of the applicable underlying limit with respect to any occurrence or

(b)     the insured's obligation to pay such amounts shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

\* \* \* \*

6.6     Action Against Company.   No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined by either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

\* \* \* \*

6.11   Policy Period . . . .   This policy applies only to personal injury . . . which occurs during the policy period[.]

22.     The retained limits of the XS Policies are $10,000.

35

23.    The "each occurrence" limits of the 1975-76 XS Policy and the 1976-77 XS Policy are $5,000,000 and the "each occurrence" limits of the other XS Policies are $3,000,000.

24.    The Schedules of Underlying Insurance in Section I of the 1975-76 XS Policy and the 1976-77 XS Policy identify policies issued by Travelers and policies issued by State Farm, each of which is described as "comprehensive general" and whose limits are identified as: "500/500,000 BI."

25.    The Schedule of Underlying Insurance in Section I of the 1977-78 XS Policy and the 1978-79 XS Policy identifies a policy issued by Travelers and a policy issued by State Farm, each of which is described as "comprehensive general" and with limits, respectively, of: "500/500,000 BI" and "500,000 CSL."

26.    The Schedule of Underlying Insurance in Section I of the 1979-80 XS Policy identifies a policy issued by Travelers and a policy issued by Catholic Mutual Relief Society of America, each of which is described as "comprehensive general" and with limits, respectively, of: "500/500,000 BI" and "500,000 CSL."

## THE UNDERLYING LAWSUITS AND UNDERLYING CLAIMS

27.    The Archdiocese has been named as a defendant in lawsuits filed by plaintiffs who allege they were injured when they were sexually abused by priests for whom the Archdiocese was allegedly responsible (the "Underlying Lawsuits"), including:

   a.   a lawsuit filed by a plaintiff proceeding under the name John Doe 1 in the District Court, Second Judicial District, County of Ramsey, Minnesota, which lawsuit is captioned <u>Doe 1 v. Archdiocese of St. Paul</u>

and Minneapolis, et al., Case No. 62-CV-13-4075;

b.  a lawsuit filed by a plaintiff proceeding under the name John Doe 26 in
    the District Court, Second Judicial District, County of Ramsey,
    Minnesota, which lawsuit is captioned Doe 26 v. Archdiocese of St.
    Paul and Minneapolis, et al., Case No. 62-CV-13-7799;

c.  a lawsuit filed by a plaintiff proceeding under the name John Doe 104 in
    the District Court, Second Judicial District, County of Ramsey,
    Minnesota, which lawsuit is captioned Doe 104 v. Archdiocese of St.
    Paul and Minneapolis, et al., Case No. 62-CV-13-5755;

d.  a lawsuit filed by a plaintiff proceeding under the name John Doe 115 in
    the District Court, Second Judicial District, County of Ramsey,
    Minnesota, which lawsuit is captioned Doe 115 v. Archdiocese of St.
    Paul and Minneapolis, et al., Case No. 62-CV-14-6661;

e.  a lawsuit filed by a plaintiff proceeding under the name John Doe 141 in
    the District Court, Second Judicial District, County of Ramsey,
    Minnesota, which lawsuit is captioned Doe 141 v. Archdiocese of St.
    Paul and Minneapolis, et al., Case No. 62-CV-10-2618 (the "Doe 141
    Suit"); and

f.  a lawsuit filed by a plaintiff proceeding under the name John Doe 153 in
    the District Court, Second Judicial District, County of Ramsey,
    Minnesota, which lawsuit is captioned Doe 153 v. Archdiocese of St.
    Paul and Minneapolis, et al., Case No. 62-CV-10-11230 (the "Doe 153

Suit").

28.     The plaintiffs in the Underlying Lawsuits seek, among other things, compensatory damages and injunctive relief.

29.     The Archdiocese tendered Underlying Lawsuits to Travelers and demanded that Travelers defend and indemnify the Archdiocese pursuant to the Travelers Policies.

30.     Travelers agreed, subject to a reservation of all of its rights and defenses, to provide a defense to the Archdiocese in certain of the Underlying Lawsuits.

31.     Without the consent of Travelers, the Archdiocese settled the Doe 1 Suit and demanded that Travelers indemnify the Archdiocese.

32.     Travelers agreed to pay a portion of the settlement of the Doe 1 Suit, subject to a reservation of all of Travelers' rights and defenses, including without limitation its right to assert that it has no duty to indemnify the Archdiocese in connection with the Doe 1 Suit and its right to obtain reimbursement from the Archdiocese for the amount Travelers contributed to the settlement.

33.     The Archdiocese also notified Travelers that numerous individuals who have not filed lawsuits against the Archdiocese have asserted claims against the Archdiocese based on allegations that they were injured when they were sexually abused by individuals for whom the Archdiocese was purportedly responsible (the "Underlying Claims") and demanded that Travelers defend the Archdiocese.

## **FIRST COUNT**

### **(Declaratory Judgment—No Duty to Defend)**

34.     Travelers repeats and reiterates each and every allegation contained in

38

Paragraphs 1 through 33 of the Complaint as though fully set forth herein.

35.     An actual controversy exists between Travelers and the Archdiocese with respect to the rights and obligations, if any, of Travelers under the Travelers Policies in connection with the Underlying Lawsuits and Underlying Claims.

36.     The Archdiocese has asserted that Travelers is obligated pursuant to the Travelers Policies to defend the Archdiocese in connection with the Underlying Lawsuits and Underlying Claims and Travelers disputes this assertion and maintains that the Travelers Policies do not obligate Travelers to defend the Archdiocese.

37.     Travelers has no duty pursuant to the Travelers Policies to defend the Archdiocese in connection with the Underlying Lawsuits or Underlying Claims, including but not limited to for the following reasons:

    a. The Archdiocese is not entitled to coverage, or coverage is limited, under the terms, conditions and/or exclusions contained in those policies, including without limitation the terms, conditions, and exclusions identified below;

    b. To the extent (i) the Travelers Policies afford coverage for liability for "bodily injury," defined as "bodily injury, sickness or disease . . .," and (ii) the injuries alleged in the Underlying Lawsuits and the Underlying Claims involve emotional or psychological injury, as opposed to "bodily injury," the Travelers Policies afford no coverage;

    c. The Underlying Lawsuits and Underlying Claims do not allege any injury that was caused by an "occurrence," as that term is defined by the Travelers Policies;

    d. To the extent the Underlying Lawsuits and Underlying Claims allege injury that occurred outside the effective periods of the Travelers Policies, the Travelers Policies afford no coverage;

    e. Travelers has no duty to defend the Archdiocese in connection with the Underlying Claims because there is no "suit";

f.  The Travelers Policies afford no coverage to the extent the Archdiocese concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof, either before or after issuance;

g.  The Underlying Lawsuits and Underlying Claims involve "known losses" or "losses in progress" or injuries that were known by the Archdiocese to be certain or substantially certain to occur or were otherwise not fortuitous;

h.  To the extent the Underlying Lawsuits or Underlying Claims seek attorneys' fees, injunctive relief, and/or punitive damages, the Travelers Policies afford no coverage;

i.  The coverage afforded by the Travelers Policies is limited by the applicable limits of liability and the Travelers Policies afford no coverage, or the coverage they afford is limited, to the extent the applicable limits of liability have been impaired or exhausted;

j.  Public policy bars or limits coverage;

k.  Coverage under the Travelers Policies is barred to the extent that not all conditions precedent and subsequent to liability or coverage have been fulfilled;

l.  Travelers' obligations, if any, are limited by the provisions in the Travelers Policies relating to "other insurance";

m.  The Archdiocese failed to comply with the notice conditions in the Travelers Policies and Travelers was prejudiced as a result;

n.  Travelers has no duty to defend the Archdiocese to the extent the Archdiocese breached provisions of the Travelers Policies requiring the Archdiocese to cooperate with and assist Travelers;

o.  Travelers has no duty to reimburse the Archdiocese in connection with any settlement entered into, payment made, obligation assumed, or expense incurred without the consent of Travelers; and

p.  Travelers has no duty under the XS Policies to defend the Archdiocese in connection with any suit seeking damages that are not payable on behalf of the Archdiocese under the terms of underlying insurance because of exhaustion of any limit of liability other than an aggregate limit.

38.     Travelers is entitled to a declaration that it has no obligation under the Travelers Policies to defend the Archdiocese in connection with the Underlying Lawsuits or the Underlying Claims.

## SECOND COUNT

### (Declaratory Judgment - Duty to Indemnify)

39.     Travelers repeats and reiterates each and every allegation contained in Paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40.     An actual controversy exists between Travelers and the Archdiocese with respect to the rights and obligations of Travelers under the Travelers Policies in connection with the Underlying Lawsuits and Underlying Claims.

41.     The Archdiocese has asserted that Travelers is obligated pursuant to the Travelers Policies to indemnify the Archdiocese in connection with the Underlying Lawsuits and Underlying Claims and Travelers disputes this assertion and maintains that the Travelers Policies do not obligate Travelers to indemnify the Archdiocese in connection with the Underlying Lawsuits or the Underlying Claims.

42.     Travelers has no duty to indemnify the Archdiocese in connection with the Underlying Lawsuits or Underlying Claims, including but not limited to for the following reasons:

   a. The Archdiocese is not entitled to coverage, or coverage is limited, under the terms, conditions and/or exclusions contained in those policies, including without limitation the terms, conditions, and exclusions identified below;

   b. To the extent (i) the Travelers Policies afford coverage for liability for "bodily injury," defined as "bodily injury, sickness or disease . . .," and

41

(ii) the injuries alleged in the Underlying Lawsuits and the Underlying Claims involve emotional or psychological injury, as opposed to "bodily injury," the Travelers Policies afford no coverage;

c.  The Underlying Lawsuits and Underlying Claims do not allege any injury that was caused by an "occurrence," as that term is defined by the Travelers Policies;

d.  To the extent the Underlying Lawsuits and Underlying Claims allege injury that occurred outside the effective periods of the Travelers Policies, the Travelers Policies afford no coverage;

e.  The Travelers Policies afford no coverage to the extent the Archdiocese concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof, either before or after issuance;

f.  The Underlying Lawsuits and Underlying Claims involve "known losses" or "losses in progress" or injuries that were known by the Archdiocese to be certain or substantially certain to occur or were otherwise not fortuitous;

g.  To the extent the Underlying Lawsuits or Underlying Claims seek attorneys' fees, injunctive relief, and/or punitive damages, the Travelers Policies afford no coverage;

h.  The coverage afforded by the Travelers Policies is limited by the applicable limits of liability and the Travelers Policies afford no coverage, or the coverage they afford is limited, to the extent the applicable limits of liability have been impaired or exhausted;

i.  Public policy bars or limits coverage;

j.  Coverage under the Travelers Policies is barred to the extent that not all conditions precedent and subsequent to liability or coverage have been fulfilled;

k.  The Archdiocese failed to comply with the notice conditions in the Travelers Policies and Travelers was prejudiced as a result;

l.  Travelers' obligations, if any, are limited by the provisions in the Travelers Policies relating to "other insurance";

m.  Travelers has no duty to indemnify the Archdiocese to the extent the

Archdiocese breached provisions of the Travelers Policies requiring the Archdiocese to cooperate with and assist Travelers;

n. Travelers has no duty to indemnify or reimburse the Archdiocese in connection with any settlement entered into, payment made, obligation assumed, or expense incurred without the consent of Travelers;

o. Travelers has no duty to indemnify the Archdiocese unless the amount of the Archdiocese's obligation to pay has been finally determined either by judgment against the Archdiocese after an actual trial or written agreement signed by Travelers;

p. To the extent the Archdiocese settled any claim or suit or incurred any obligation without Travelers' consent, Travelers has no duty to indemnify; and

q. Travelers has no duty to indemnify under the XS Policies with respect to any amount that is not in excess of the applicable underlying limit.

43. Travelers is entitled to a declaration that it is not now, and never has been, under any obligation under the Travelers Policies to indemnify the Archdiocese for any judgment or settlement in connection with the Underlying Lawsuits or the Underlying Claims, or for any expense incurred in connection with the Underlying Lawsuits or Underlying Claims.

WHEREFORE, Travelers demands judgment against the Archdiocese as follows:

A. Declaring that Travelers has no obligation under the Travelers Policies to defend the Archdiocese in connection with the Underlying Lawsuits or Underlying Claims;

B. Declaring that Travelers does not now and never has had any obligation under the Travelers Policies to indemnify the Archdiocese in connection with the Underlying Lawsuits or Underlying Claims;

C. Ordering the Archdiocese to reimburse Travelers for the amount paid by Travelers toward the settlement of the Doe 1 Suit; and

D. Ordering such other and further relief as the Court shall deem just and equitable.

## **Demand For Jury Trial**

Travelers hereby demand a jury trial on all issues so triable.

O'MEARA, LEER, WAGNER & KOHL, P.A.

Date:  January 14, 2015            _____/s/ Dale O. Thornsjo_____

Dale O. Thornsjo                              (#162048)
Lance D. Meyer                               (#393073)
Suite 600
7401 Metro Boulevard
Minneapolis, Minnesota 55439-3034
Telephone: (952) 831-6544
Facsimile: (952) 893-8398
E-mail: DOThornsjo@OLWKLaw.com
         LDMeyer@olwklaw.com


DRINKER BIDDLE & REATH LLP

Robert M. Vinci (NJ #03336-1994)
(*Pro Hac Vice* Motion pending)
600 Campus Drive
Florham Park, New Jersey 07932-1047
Telephone: (973) 549-7075
Facsimile: (973) 360-9831
E-mail: robert.vinci@dbr.com

Frederick P. Marczyk (PA #89878)
(*Pro Hac Vice* Motion pending)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
E-mail: frederick.marczyk@dbr.com


*Attorneys for Defendant*
*Travelers Casualty and Surety Company*